IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BLAINE ALTON DOWDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-587-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant.[1] ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 59-71). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 22, 2017, the alleged onset date. (TR. 61). At step two, the ALJ determined Mr. Dowdy suffered from severe impairments involving degenerative disc disease of the cervical and lumbar spines; right eye blindness; vertigo; gout; and obesity. (TR. 62). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 62).

At step four, the ALJ concluded that Mr. Dowdy retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except this person could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The claimant could stand or walk 4 out of 8 hours total and sit 6 out of 8 hours total. The claimant never should climb ladders, ropes, or scaffolds but occasionally could climb stairs, balance, stoop, kneel, crouch, and crawl. The claimant frequently could operate foot pedals. He occasionally could perform overhead reaching and other directions reaching would be frequently. This person should avoid unprotected

heights and dangerous moving machinery. The claimant does not have right side peripheral vision and has occasional depth perception.

(TR. 63).

With this RFC, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a reservations agent. (TR. 71). As a result, at step four, the ALJ concluded that Mr. Dowdy was not disabled. (TR. 71).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) error in the ALJ's evaluation of a medical opinion and (2) a lack of substantial evidence to support the RFC determination. (ECF No. 31:11-16).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

3

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. THE ALJ'S CONSIDERATION OF A MEDICAL OPINION

Mr. Dowdy alleges error in the ALJ's failure to properly evaluate several opinions from Audralan Fox, M.D., Plaintiff's primary care physician. The Court agrees.

### A. The ALJ's Duty to Evaluate Medical Opinions

Medical opinions are statements from a medical source about what the claimant can do despite impairments and whether the claimant has certain work-related abilities and/or limitations. 20 C.F.R. § 404.1513(a)(2). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). For claims filed after March 27, 2017, such as Mr. Dowdy's,[2] 20 C.F.R. § 404.1520c provides that the Commissioner no longer will "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only articulate how persuasive he finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the

---

[2] *See* TR. 59.

disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### B.   Dr. Fox's Opinions

On October 31, 2018, Plaintiff's primary care physician, Dr. Fox, completed a "Physical Residual Functional Capacity Questionnaire" wherein she diagnosed Mr. Dowdy with cervical stenosis and cervical and lumbar degenerative disc disease. (TR. 600-604). According to Dr. Fox, Plaintiff's cervical symptoms involved a decreased range of motion in his neck, "constant burning," and vertigo; and his lumbar issues were characterized by burning and radiating pain and made worse by standing or sitting. (TR. 600). Dr. Fox stated that Plaintiff's pain would "constantly" interfere with his attention and concentration and Mr. Dowdy was "severely" limited in his ability to deal with work stress. (TR. 601).

Regarding specific functional limitations, Dr. Fox stated that Plaintiff:

- Could walk less than one-half block;

- Could sit for 15 minutes at a time, for a total of less than two hours in an eight-hour workday;

- Could stand for 10 minutes at a time, for a total of less than two hours in an eight-hour workday;

- Required a job which permitted shifting positions at will;

- Required a job which allowed unscheduled hourly breaks during the workday;

- Required a job that would allow him to walk for 2-3 minutes, every 10 minutes;

- Could "frequently" lift less than ten pounds and "occasionally" lift 10 pounds;

- Could use his hands to grasp and turn, but was limited to twisting objects 10% of the time;

- Could engage in fine manipulation with his fingers 80% of the time;

- Could never engage in reaching his arms in any direction;

- Could never bend and could only twist at the waist 10% of the time; and

- Would likely miss work three times per month owing to his physical impairments.

(TR. 602-604).

### C.   The ALJ's Consideration of Dr. Fox's Opinions

In evaluating the opinions from Dr. Fox, the ALJ stated:

Subsequent to hearing, the claimant's primary care physician, Dr. Fox, completed a physical residual functional capacity questionnaire dated October 31, 2018. . . . [Dr. Fox] opined that claimant could lift and carry 10 pounds occasionally and less than 10 pounds frequently with standing, walking, and sitting less than 2 hours total in an 8-hour workday. She

6

opined that the claimant, on average, would be absent from work more than three times per month. Although Dr. Fox is a treating source, her opinion is inconsistent with the medical evidence, including measurable findings on clinical examinations, as well as claimant's stated activity level in the record. Moreover, the evidence does not support absences from work more than three times per month. The most recent treatment record from Dr. Fox in July 2018 reflects that the claimant was in no acute distress, alert, well appearing and normal gait. At the time of this visit, Dr. Fox did not indicate any abnormal examination findings. Moreover, musculoskeletal examination findings from the claimant's cardiologist in July 2018 revealed the claimant had normal strength and no swelling. For these reasons, the opinions from Dr. Fox are somewhat persuasive. The entirety of the medical evidence of record does not support significant limitations as suggested by Dr. Fox.

(TR. 70).

### D.   Error in the ALJ's Evaluation of Dr. Fox's Opinions

Several errors exist with the ALJ's evaluation of Dr. Fox's opinions which warrant remand.

Initially, the Court notes that the ALJ failed to discuss a significant portion of Dr. Fox's Physical RFC Questionnaire. For example, the ALJ only addressed Dr. Fox's opinions regarding Plaintiff's abilities to lift, carry, walk, stand, sit. *See supra*. Noticeably absent, however, is any discussion regarding Dr. Fox's opinions on Mr. Dowdy's:

- need to shift positions at will;

- take unscheduled breaks which would allow him to walk for 2-3 minutes every ten minutes;

- ability to grasp, turn, and twist objects;

- ability to engage in fine manipulation with his fingers; and

- ability to reach, bend, or twist.

7

(TR. 70). At the hearing and in a functional report, Mr. Dowdy stated that sitting was very difficult for him and when sitting, he would have to frequently change positions. (TR. 122-123, 342, 374, 378). The omission is significant because the ALJ concluded that Plaintiff was capable of performing his past relevant work as a reservations agent which is identified as "sedentary" work involving "sitting most of the time." *See* TR. 71; Dictionary of Occupational Titles (DOT) # 238.367-018 (reservations agent). At the hearing, Plaintiff stated that while at his job, he could not even complete a four-hour shift because he could not sit for that duration of time. (TR. 120). And in a functional report, Mr. Dowdy stated: "[I]t is very difficult to sit at my desk and work on a computer." (TR. 342). But the ALJ concluded that Plaintiff could sit 6 hours during an 8-hour workday and did not make an allowance for Mr. Dowdy to shift positions at will and/or take unscheduled hourly breaks to allow him to walk for 2-3 minutes. *See* TR. 70.

    Additionally, the ALJ failed to discuss Plaintiff's abilities to:

- grasp, turn, and twist objects;
- engage in fine manipulation with his fingers; and
- reach, bend, or twist.

(TR. 70). These opinions are significant because the reservation agent job requires "frequent" reaching, handling, and fingering. *See* DOT # 238.367-018.[3]

    In addition to ignoring a portion of Dr. Fox's opinions, the ALJ's stated rationales for discounting certain of Dr. Fox's opinions are vague and the Court cannot discern the

---

[3] The DOT defines "frequent" as existing from one-third to two-thirds of the time. *See* DOT # 238.367-018.

evidentiary basis in support of the same. For example, the ALJ stated that Dr. Fox's opinions were: (1) inconsistent with the medical evidence, including measurable findings on clinical examinations and Mr. Dowdy's stated activity level in the record and (2) the evidence did not support absences from work more than three times per month. (TR. 70). In support of these rationales, the ALJ cites:

- a record showing Plaintiff appeared well, was in "no acute distress," and had a "normal gait" and

- findings from a cardiologist that showed Plaintiff had "normal strength" and "no swelling."

(TR. 70).

Facially, the ALJ fulfilled his duty to articulate how persuasive he found Dr. Fox's opinions by discussing their consistency with other medical evidence of record. *See* 20 C.F.R. § 404.1520c(b). However, the Tenth Circuit Court of Appeals has found reversible error where the ALJ failed to explain or identify what the claimed inconsistencies were. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Here, in discounting Dr. Fox's findings regarding Plaintiff's abilities to lift, carry, walk, stand, and sit, the ALJ has cited inconsistencies based on "measurable findings on clinical examinations," but the medical records he relies on could only arguably relate to Mr. Dowdy's ability to walk—i.e.—the ALJ's reliance on a record demonstrating Plaintiff's "normal gait." The ALJ fails to cite any "measurable findings on clinical examinations" which would support discounting Dr. Fox's opinions regarding Plaintiff's abilities to lift, carry, stand, and sit. And, as noted above, at the hearing and in a functional report, Plaintiff stated that he had difficulty sitting, and that his pain prevented him from sitting

9

for a four-hour work shift. *See supra*. Thus, the ALJ's dismissal of Dr. Fox's opinion as inconsistent with "Mr. Dowdy's stated activity level in the record" is simply wrong, absent specific citations to the contrary which would indicate otherwise.

In response to Plaintiff's argument, the Commissioner contends that the ALJ's rationales for discounting Dr. Fox's opinions were supported by substantial evidence. (ECF No. 35:12-15). Defendant's line of reasoning is unpersuasive for two reasons: First, the Commissioner ignores the fact that the ALJ failed to discuss a significant portion of Dr. Fox's RFC Questionnaire. This type of selective review is impermissible and constitutes reversible error. *See Chapo v. Astrue*, 682 F.3d at 1292 ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that the ALJ's reasons stated in evaluating medical opinions must allow for meaningful appellate review); *Deardorff v. Comm'r, SSA*, 762 F. App'x 484, 490 (10th Cir. 2019) ("In reviewing the evidence, . . . the ALJ cited to medical records for some symptoms, but ignored the headache symptoms even though they are noted in those same records.").

Second, the Commissioner attempts to defend the ALJ's treatment of Dr. Fox's opinion by citing:

- Dr. Fox's treatment of Plaintiff's gout, which improved with steroid injections;

- A lack of evidentiary support in Dr. Fox's records which would support his opinions regarding Plaintiff's ability to use his hands or reach;

- Plaintiff's lack of need for an assistive device to aid walking; and

- Plaintiff's reports that he could independently perform most activities of daily living.

(ECF No. 35:14-15). But the ALJ himself did not rely on these rationales in discounting Dr. Fox's opinions and the Court cannot engage in a *post-hoc* analysis and speculate regarding the missing analysis. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

In sum, the Court concludes that the ALJ engaged in improper selective review of Dr. Fox's opinions and his stated rationales for discounting the opinions were vague and lacked evidentiary support. These errors mandate remand.

## VI.   PLAINTIFF'S SECOND PROPOSITION

In Mr. Dowdy's second allegation of error, he argues a lack of substantial evidence to support the RFC. (ECF No. 31:14-16). However, the Court will decline consideration of this issue based on the ALJ's legal error in evaluating Dr. Fox's opinions, which could affect the RFC on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on November 4, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE